Good morning, Your Honors, and may it please the Court, my name is Bruce Herlin and I represent the appellant. The first thing I'd like to talk about is the plea in the California arson. And significantly, I'd like to note that this plea took place on May 22, 2008. And it was a few months after this Court's decisions in Miranda-Rosales that was decided on December 26, and Jordison that was decided on October 30, 2007. And a few months later at this plea, the prosecutor started the plea with saying to the Court and to defense attorney that it was, quote, not a violent felon. And on the basis of that statement by the prosecutor, which is at ER 8182, the plea, the no contest plea was proceeded with. During the course of this plea, the California state judge told Mr. Pineda that he would be denied amnesty, he will be deported, and there was no stipulated factual basis in this plea whatsoever. And I would submit that the plea in the California case was defective because there was no factual basis. After the plea, Mr. Pineda went before the immigration judge. He had no attorney. The judge improperly questioned Mr. Pineda about the facts of the arson. Hold on a second. Let me back up. You say this was an arson. That's what he pled not no contest to. Right. And an arson of what? Well, the charge had to do with Senator 452C and had to do with personal property or physical property. And he pleaded what, no contest? No contest. How do you have a factual basis for somebody who pleads no contest? Well, I think my understanding, and I personally haven't had much experience with no contest pleas. A no contest plea means I don't contest it. Then you don't go into the factual basis. Well, I think that's fair. That's the whole point of an Alford plea or a no contest plea. But still, on an Alford plea, you can't. So what would a factual basis look and sound like? It would sound like that on such-and-such a date, the defendant set a fire, destroyed a property. He's not going to agree to that. He's pleading no contest. Right. But still, there would have to be a factual basis as opposed to someone coming in and just pleading without any facts alleged whatsoever. Where does it say that in California law? I don't know. But my understanding is that it is. Well, you're telling us this is defective under California law. I'd like to know what authority you have for the proposition that it's defective under California law. You don't know. No. Isn't that a problem for your position? Yes. But I would like to go further into this because it has to do more with just being a defective plea. It has to do with there being no facts stated in the plea before the California judge and then going to the immigration judge after the no contest plea. The only facts that are stated are in the what was it, an information? Right. And before the immigration judge, given the fact that there are no factual basis, I would add, and to further respond to your question, that the California state judge brought up and questioned the attorneys and asked, do you stipulate to the factual basis? And both attorneys said, yes, we stipulate to the factual basis. This is in the California proceeding? Correct. Correct. So there was a factual basis. No. There was a question by the judge. Do you stipulate to the factual basis? No. Do you stipulate that there is a factual basis? There is a factual basis. Correct. And there was a stipulation that there was. And there was. There was no statement of the facts. Well, there doesn't have to be. When you stipulate that you're liable for something, you don't have to say why you think you're liable. Well, certainly the practice in the District Court of Arizona is to state the facts, and typically the prosecutor states the facts and the judge asks. Your position with respect to the arson, as I understand, or maybe it isn't, but maybe it should be, is that arson in California is categorically broader than the generic arson crime at Federal law. Yes. Right? Because it allows arson to occur when the arsonist's own property is put to fire. Right. Whereas on the generic Federal crime, it's property of others. Right? Right. So therefore, categorically, this is not an aggravated felony under the statutory definition of an aggravated felony. Yes. However, the sentencing guidelines determine that arson under any name is an aggravated felony. So don't we have in this case two lines of authority in the Ninth Circuit, one adopting the statutory basis for determination of what an aggravated felony is, and the other using the sentencing guideline basis? Those two cases, two lines of cases, are irreconcilable, and perhaps what we ought to do is ask for a sui sponte and bank hearing. Correct. There's a conflict in the circuit because Miranda-Rosales and Jordanson both followed the statute, referred to the definition under the statute under 18 U.S.C. 6, and found that arson was not a crime of violence, whereas Velazquez-Reyes, which was decided before Miranda-Rosales and Jordanson in 2005, went directly to the guidelines. Yes. And neither Miranda-Rosales or Jordanson cited the prior Velazquez-Reyes, which was totally different from the way Miranda-Rosales did. And what you're saying is that here the documents of conviction under Taylor are not sufficiently explicit as to give us any basis for saying that he was convicted of arson of the other person's properties. Yes. Categorical or modified, okay? Yes. And that is consistent both with everything that was just discussed, the California arson plea, and the proceedings before the immigration judge. What? I got you. Do you want to save the rest of the time for rebuttal? No, I'd like to add a couple more things. The – we did argue in the brief. Let me ask, if I may, would it make some sense that Judge Zapata is sentenced to less than ten years, four years? Why shouldn't the judgment of conviction simply be corrected to reflect the correct enhancement? You stand some danger of the judge increasing the sentence. I cannot imagine that a judge who's – Judge Zapata who's sentenced to 48 months on an aggravated felony would give my client more time on a non-aggravated felony. Well, that's your judgment. Yes. And certainly there would be issues if – What do you mean more time on a non-aggravated? He couldn't give him any time if it were non-aggravated, could he? Under B-2, he – it's got to be an aggravated felony in order to give the enhancement, doesn't it? Or a series of misdemeanors. Well, he – yes, he has to get the enhancement under B-2. But under B-1, he could get the enhancement. Two. Yes. Well, you get two years because he came back under 1326A. Right. And so B-1 allows an enhancement of a certain amount of misdemeanors. B-2 allows an enhancement of his aggravated felony. We're not dealing with misdemeanors. If it's not an aggravated felony, he doesn't get any enhancement. Right. So to answer your question, Judge, if I'm remanded for resentencing, he shouldn't get any more time. He shouldn't what? Get any more time. He should get – he should get his two – well, he should get whatever the judge decided, but it's not going to be over two years. Well, it could be up to 10 years, couldn't it? If it's an aggravated felony. All right. We did argue in the brief that there was no considered an intelligent waiver of appeal. There was no attorney, as I said before, before the immigration judge. And so the waiver of appeal is questionable under that. The Court asked about Apprendi and in a supplemental order recently, and I would submit that there's an issue here about whether the jury should decide the prior conviction and also whether the jury should decide whether the deportation was legitimate. I have nothing further. Didn't the indictment – well, that's fine. Pardon? Didn't the indictment tentatively cover this question? In a way, the indictment cited B-2, and if that's considered to have pled B-2, then it should have been proven before the jury and had the jury decide instead of the judge. Okay. Thank you very much. Good morning. May it please the Court. My name is Craig Russell, appearing on behalf of the United States. Addressing first the issue of the collateral attack on the underlying order of deportation in this case, the governing statute, Section 1326d, lays out some pretty strict requirements that a defendant must meet in a legal reentry after deportation prosecution in order to collaterally attack the underlying order of deportation from the immigration court. First and most importantly in this case, the defendant, in order to attack that order of deportation, must have shown that he exhausted his administrative remedies in immigration court. And in this case, the record, of course, shows he did not. In this case, rather, the defendant is arguing – He did not because he did not appeal? Yes, Your Honor. What happened in immigration court is at the end of the hearing, the immigration judge went back and forth on a – actually, a rather lengthy colloquy about his rights to appeal, explained it, at least asked him at least twice if he understood his right to appeal and whether he wanted to. And in the answer to that question, at the end of the hearing in immigration court, the defendant said that, no, he wanted his deportation, which, in a context in which this immigration court hearing happened, is also important. The transcript of this hearing indicates at the very beginning of the hearing that the hearing had been continued on several occasions to allow the defendant time to hire a lawyer and to prepare his arguments in immigration court. And, in fact, the immigration judge in this case offered him an opportunity to continue the case again if he wanted more time to get a lawyer or to further prepare. And at that point at the beginning of the hearing, when offered more time, the defendant declined and stated that he wanted to go forward at that time. So that statement, taken in conjunction with the statement he made at the end of the hearing about wanting his deportation, Your Honor, I believe shows that the waiver of the right to appeal the immigration judge's decision to the Board of Immigration Appeals was considered inintelligent and should not be somehow excused by the court. It shows, Your Honor, that rather than continuing the process on to immigration court, which would have been appropriate, he just decided that he would rather end the process and simply go home to Guatemala. And, Your Honor, the record does indicate that this, especially in light of the colloquy between the immigration judge and the defendant, which went on for some time, that it was a knowing and intelligent and considered an intelligent waiver of his rights to the BIA. There was no confusion about his rights or whether he had these rights to continue the process to the BIA. Does the Petitioner dispute what you just say? Well, I don't think they're disputing the facts that I just recited. I think there are some other grounds that they set forth for why they say it wasn't considered an intelligent waiver. This catches me by surprise. My mind was all on the 1326b-2 versus sentencing guideline definition of arson. As far as the validity of the immigration, the removal order, we have jurisdiction to review final orders of removal. And we don't review orders of the immigration judge if they haven't been appealed to the BIA. We only appeal, we only review final orders of removal of the BIA. And, Your Honor, I think I see. Why are we spending time on this issue? Well, Your Honor, it was raised in the appellant's brief, claiming that they met the statutory definition of an aggravated felony for purposes of 1326b-2. We did submit a supplemental brief in this case. There's a difference in the definition of an aggravated felony for purposes of 1326b-2.   And the reason why there's a difference is because the guidelines specifically enumerate arson as a crime of violence, where the definition under Section 1101A43 does not. And so we default to the use of force against personal property definition, which is found in Title 18.   So the definition in this case is a minor felony of another person. Yes, Your Honor, that's correct. In this case, at sentencing, that issue regarding whether the prior arson conviction in California constituted a B-1 or a B-2 or not a felony at all wasn't really raised. The argument during sentencing with Judge Zapata in this case really focused on the 16-level enhancement. However, there was statements made by Judge Zapata, by the district court in this case during sentencing, that he thought that he could find an inference that the use of the arson in this case was a use of force against the person or property of another, that Mr. Pineda, the defendant in this case, was actually burning the property of another. Whether that court, whether this Court finds that's an argument. But the documents of conviction, as I remember it, simply say that he was burning a structure or forest land across from an address near the Ventura Freeway. That's correct, Your Honor. And to be entirely accurate, I think the district court in this case stated that he thought perhaps it might be an inference he could draw. I don't think he, on the record, drew that inference. He didn't actually draw the inference. He just mused about it. Yes, Your Honor. That's correct. I don't want to be candid with the Court on that. The point I'm trying to make is if this Court finds that that was an incorrect inference or not appropriate inference, it's our, the government's. Well, but see, it goes beyond that. I mean, we're told that, by the Supreme Court, that we can't retry these cases, that we have to rely on the documents of conviction. The documents of conviction have to expressly state that the crime involved the property of another in order to meet the generic definition. It's very similar to burglaries. Burglaries in Oregon, for instance, or in California can be of a container. They can be of a phone booth. They can be all sorts of things which are not common law dwellings. And so if we just have a 459 P.C. California burglary without first degree, we can't go to the, on the documents of conviction and say this was a generic burglary of a dwelling. Yes, sir. So inferences and musings as to whether it was a property of another doesn't really help. Now, I'm putting you the case that I put your learned colleague, which was don't we have two lines of cases here in the Ninth Circuit, one using the definition of arson under the statute 1101A43F, and the other one using the guidelines and aren't those two lines of cases irreconcilable? Your Honor, I don't think they're irreconcilable from a textual reading of the statute definition of aggravated felony on the one hand and the guidelines on the other hand because the guidelines specifically say arson is a crime of violence. Guidelines says arson, whether it's your own property or anybody else's property, is arson, right? That's correct. But California says arson is an arson if it's your own property. And therefore, the statutory definition of an aggravated felony, which is does the State's conviction fall within the generic category, would allow someone to burn his own property, be convicted, and he would not, he would be convicted in California, but he would not be convicted under the Federal statute. Your Honor, I would, it is conceptually inconsistent, yes. Those two are inconsistent. In the back of my mind, just wondering whether we shouldn't recommend that we take this matter in bank and determine which of those two sources of law, the statute or the sentencing guidelines, should be our cornerstone to determine this issue. Would you object to that? Your Honor, the only thing, I'm not sure I would object to that. I think the only, if the Court was inclined to do that, of course, we would respond appropriately. Are you saying it won't make a difference? Well, Your Honor, I think that there's case law from the circuit that basically makes the distinction saying that there is, it's apples and oranges. The definition for the statutory maximum under V-1 and V-2 is just a different analysis on what the guidelines set out. They're different, just a different analysis. They don't necessarily have to square with each other. Are we bound to use one or the other in this instance? I think if we're looking at the statutory maximum under V-2, I think we should look to the statutory definition under section 1101A43. Yes, Your Honor. Although I do think that then the reason why we laid out the guideline arguments is, but I still think that the plus 16 level enhancement is appropriate under the guidelines. Wasn't there an admission, I don't know if it's part of the record, that the wrongdoer admitted that it was not his property? There was that admission made in immigration court, yes, Your Honor. That's correct. Okay. That's correct. Your Honor, the, looking at my remaining time, I would just make one more quick point, is if this Court does find that the, the arson conviction in this case doesn't meet the statutory definition of an aggravated felony for V-2 purposes, that the appropriate remedy would be to remand the Court for a ministerial change of the judgment under 1326B-1. Say that slowly. To the appropriate remedy would be what? To remand the case, Your Honor, to the district court, to simply correct the judgment to reflect the conviction enhanced by section 1326B-1 as opposed to 1326B-2, because I, I believe this arson conviction. And limited to that. Yes, Your Honor, because I believe this arson conviction would meet the definition of a, of at least a felony under 1326B-1 under any definition, and I, I believe that this Court at least, at least suggested that remedy in the United States v. Rivera-Sanchez case, and we also cited two unpublished cases from the Eleventh Circuit and the Fifth Circuit that would indicate. Help me, counsel. B-2 requires the enhancement from up to 10 years to be based on the commission of the conviction of an aggravated felony. Yes, Your Honor. But, Your Honor, B-1, which is what you just recommended a moment ago, I don't have the text of the statute right here, but didn't it have to do with a series of misdemeanors? Actually, it's any felony would meet the purposes of, of B-1. Any felony. That's right. All right. Is it 20 years? Section B-2 has a 20-year statutory maximum, and under B-1 would simply be a 10-year statutory maximum. Yes, that's right. And he's got 48 months, so he would qualify under either. That's correct, Your Honor. Okay. And if the Court has no further questions, I would simply ask that this Court affirm the district court's judgment in this case. Thank you very much. Thank you, Your Honor. I'd like to address just a couple of points here. First of all, the – in the district court, the deportation and the felony, all these issues were addressed. And so this is not something where the – this Court does not have any jurisdiction to review what happened in the immigration court and the aggravated felony issue. Exactly what are you asking us to do with this case? What do you want done? I would like – what I'm asking for is that this not be found as an aggravated felony and the case be remanded for resentencing. And as I said before – Well, the – as was discussed by the government, under B-1, if the felony in California is legitimate, then it's a felony, a non-aggravated felony, and it falls under B-1, and that provides for a sentence not more than 10 years. And so we're – if that – there are three – Well, if that – if that is what you're asking for, why don't we just all agree right now that there's been no miscarriage of justice because he got 48 months instead of 10 years? That's why I ask you what you want to ask – what you want us to do. Well, there are a number of responses to that. Him being charged under B-2 in the indictment with an aggravated felony, having judgment entered against him in an aggravated felony, when there is no aggravated felony, should be remanded to – to the district court. And if – if this court allows the indictment to be amended to essentially strike out the allegation that it's a B-2 case and then put in that it's actually a B-1 case and allow it to go back to the district court to be resentenced, my client still would prefer, if it's a B-1 case, to be convicted of a non-aggravated felony, and the judge should sentence him to lesser time than he's sentenced for an aggravated felony. So you think you're – you think you have a shot at less than 48 months? Is that what you're telling me? Yes. I think that a judge is going to sentence one person to more time for an aggravated felony and lesser time for a residential. So the judge – so on resentencing, a plenary resentencing, the judge will probably dig into exactly what the guy burned. Well, and that's another point I wanted to bring up, if I may. What did he burn? Was it his own property or was it somebody else's? It was property. He didn't know who owned it. So it wasn't his. He didn't say he owned it. It's a little – it's very brief and not very clear before the immigration judge. And this is where the immigration judge went beyond the immigration judge's authority to ask him questions regarding the facts of it. But certainly he said before the immigration judge in a very brief way that he didn't know who owned it and it was across the street. Let me ask you a question. And that was it. Yes. Do you think that if we were to take the suggestion of your learned friend and remand for resentencing under B-1, that would be a proper or an improper amendment of the indictment? Improper. So has the statute already run on an indictment which would charge B-1? I can't remember the dates now. I don't know. So you would argue on remand you can't do anything because the statute's run and it's an improper amendment of the indictment. If the statute has run, yes. So you're not really asking us then to remand for resentencing. You're saying remand and then we'll blow up the whole case. Well, we'll find out what happens in the district court on a remand. But the point is, how can the government allege an indictment from the grand jury, B-2, and then on appeal it's determined, well, that was wrong, let's just cross out the 2 and let's just write in a 1? Yes. So you're not asking us to remand on B-1. No, I'm asking you to remand it to the district court. For what? For further proceedings there. For further proceedings. Okay. During which you will claim that the indictment doesn't work because it says B-2, the statute is run, and your client is out. Basically to reverse the judgment of the district court. Let me ask you another question. Why can't we treat a remand for resentencing under B-1 as simply a resentencing under a lesser included crime? It would be a lesser included crime. But still, the lesser included was not the crime that was alleged in the indictment. But certainly lesser included are never alleged indictments. So you realize that you might be rolling the dice, though, and if you prove to be wrong your client could get 10 years. Yes. And I said before that would create more issues because I would at that point argue in the district court, et cetera, that he's being punished for this appeal because, as I said before. Well, you would argue that, but let's assume you might lose. No, I don't know what would happen. Might lose. Right. Okay. I would like to add one more thing, and if I may. Sure. In talking about this procedure, about whether the guidelines pertain or you go under the statute, the statute that lists the felonies are, is in 8 U.S.C. 1101.43a to U. And then you go into 43F, which is the crime of violence. Now, it would have been very easy in this statute to just list arson if Congress intended that arson be an aggravated felony. You just write in the word arson, just like the Guidelines Commission wrote in the word arson in the Guidelines. Thank you very much. Thank you. Thank you. The Court thanks the parties for their oral presentation, and the case of U.S. v. Pineda is marked submitted. All right. The next case on the calendar is U.S.A. v. Dalmacio Ramirez Santos. Counsel's not here, I don't think. Oh, wait. Is that counsel? Is counsel here on that? I'm not sure. I'm not counsel for the United States in this case. Ms. Boyce, who is counsel for the United States, is in Courtroom No. 1 finishing an argument. Shall we take a brief recess? It should be about 15 minutes, would she? I think the argument is just completing your argument. All right. Thank you very much. The Court will stand in recess for 15 minutes.
judges: George, Trott, Bea